Filed 8/18/20  In re H.F. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re H.F., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B303093 (Super. Ct. No. J072084) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>S.F.,<br><br>    Objector and Appellant. | |

S.F. (mother) appeals from orders of the trial court denying her Request to Change Court Order (Welf. & Inst. Code, § 388)[1] without an evidentiary hearing, and terminating her parental

---

[1] All future statutory references are to the Welfare and Institutions Code.

rights to her biological son, H.F. (§366.26.) She contends the trial court erred in denying the section 388 petition without an evidentiary hearing because her petition established a prima facie case of changed circumstances. She contends the trial court erred in terminating her parental rights because the "beneficial relationship" exception applies to her relationship with H.F. (§ 366.26, subd. (c)(1)(B)(i).) We affirm.

FACTS

H.F. was born in November 2018. About five months later, in April 2019, he was taken into protective custody by respondent, the Ventura County Human Services Agency (HSA). Mother and H.F. were told to leave an apartment in Thousand Oaks where they had been staying with a friend. The friend called police in the afternoon of April 5, 2019 because mother was making a disturbance outside. When a sheriff's deputy arrived at about 5:30 p.m., mother was holding her infant son while yelling and trying to get back in to the apartment. The deputy assisted her in recovering her belongings. Mother appeared to be intoxicated. She told the deputy that she needed to feed the baby but did not have a bottle. Mother also did not have a crib, a car seat or other essential supplies for the baby. Although mother had not committed a crime, the deputy was unwilling to leave mother on the street or transport her to a shelter because she was intoxicated, behaving erratically and seemed unable to adequately care for the baby.

An HSA social worker arrived and tried to get mother to explain the situation. The social worker called friends and family members identified by mother, but could not find anyone to assist her. As they talked, the social worker became convinced mother was under the influence of alcohol. She smelled of alcohol and

2

"was not making any sense during the interview." The social worker believed mother was becoming increasingly paranoid and belligerent toward the sheriff's deputy.

Mother stated that she was planning to spend the night in a motel. She could not say when she last fed the baby. She had him tightly wrapped in blankets that were also covering the baby's mouth and nose. Both the social worker and the deputy sheriff were concerned about the baby's ability to breathe. Mother told the social worker that she had "mental health issues" for which she took medication. She also gave the social worker conflicting information about whether she had taken medication that day. The social worker reported that mother was initially able to answer questions but, "after about five minutes she became paranoid and did not make sense when answering any questions. She was asked one thing and would answer something totally different. She would stop during the conversation with this social worker to belittle or insult the police."

After the social worker took H.F. into emergency custody, mother continued to argue with the sheriff's deputies. She refused to sign any documents relating to the detention and instead ran away into the night. H.F. was placed with his maternal grandmother. He has remained in her custody throughout this proceeding and she is his prospective adoptive parent, along with a maternal aunt.

Detention Hearing.

At the detention hearing on April 10, 2019, respondent informed the juvenile court that mother has four other biological children. The two older children live with their biological father and have virtually no relationship with mother. Both of those children were the subject of numerous prior dependency referrals,

3

each of which related to mother's substance abuse. Mother's third child was declared a dependent of the juvenile court in 2011 when he was 12 days old, "due to the mother's substance abuse, issues of domestic dispute and caretaker absence."[2] Mother failed to engage with the family reunification services she was offered. Reunification services were terminated and the child was placed with his maternal grandmother, who became his legal guardian.

In November 2013, mother's fourth child was removed from her custody when the child was about seven months old, "due to mother's substance abuse." Although mother was offered family maintenance services, she was bypassed for reunification services about one year later. Mother was found to be intoxicated in her home while she was caring for the child. She was arrested for "Lewd Practices in Presence of Minor and Violation of Felony Probation." The child was placed with her maternal grandmother, who is now her legal guardian.

Mother has prior convictions of driving under the influence of alcohol and a long history of alcohol abuse. She has had numerous contacts with law enforcement arising out of her alcohol use and domestic disputes with multiple partners, including the biological fathers of her children. Mother was in inpatient substance abuse treatment when she gave birth to her fourth child; she lost custody of that child after relapsing.

The trial court ordered H.F. detained and granted mother supervised visitation. It set the jurisdiction and disposition

---

[2] Reports from that dependency proceeding indicate that the infant was taken into protective custody after mother was arrested for felony child endangerment and public intoxication. The infant was being transported with mother in a car that had no car seat, while the driver was under the influence of alcohol.

4

hearing for May 8, 2019. The hearing date was later continued to June 4, 2019.

Between the detention hearing and the jurisdiction and disposition hearing, mother consistently attended supervised visits with H.F. during which she behaved appropriately. She had numerous conversations with the social worker regarding her history of substance abuse, domestic violence and mental health challenges. Mother informed the social worker that she had been diagnosed as bipolar and ADHD and said she was taking prescription medication for both conditions.

Mother lived in Palmdale, with her father. She was admitted into an inpatient substance abuse treatment program in Los Angeles County but never actually entered the program. Instead, she entered a different outpatient recovery program. Mother attended early recovery skills classes and a relapse prevention group in May. On two occasions, she missed sessions she was expected to attend. Mother also attended AA/NA meetings in April and May and obtained a sponsor. The sponsor indicated they had had one meeting before the jurisdiction and disposition hearing. Mother had some difficulty complying with the drug and alcohol testing requirement because of the long distance between her home in Palmdale and the testing site. Her testing dates also sometimes conflicted with supervised visits with H.F. or with court dates. On May 1, 2019, mother tested positive for marijuana and methamphetamine.

Mother has a tumultuous relationship with H.F.'s biological father. The jurisdiction and disposition report documented six occasions between October 2017 and April 2019 in which law enforcement responded to verbal arguments and physical altercations between the couple. On each of these occasions, the

responding officers concluded one or both of the parents had been drinking alcohol.

      <u>Jurisdiction and Disposition Hearing.</u>

      At the jurisdiction and disposition hearing, mother testified that she did not drink alcohol on the night H.F. was taken into protective custody. She testified that she and the baby got stranded in Thousand Oaks because she missed the last train back to Palmdale. Her friend had not kicked her out of the apartment where they had been staying; she went outside because the friend had to leave to do an errand. Mother had money to stay in a motel that night. She also had plenty of supplies for the baby, including a bottle to feed him with. She did not feed the baby while the sheriff's deputies and social worker were there because he was sleeping and she didn't want to wake him up. Mother acknowledged her history of alcohol abuse, treatment and relapse. She was in inpatient treatment in 2011, 2012 and 2016. At the time of the hearing, mother was enrolled in an outpatient treatment program and was seeing an individual therapist.

      Respondent recommended that family reunification services be bypassed for mother. The recommendation was based on mother's failure to reunify with two other biological children, her failure to resolve her substance abuse, domestic violence and mental health issues, her continued use of alcohol after treatment, her recent positive test for marijuana and her failure to participate in services in this case. Respondent noted that mother consistently minimized her alcohol use and lied about continuing her relationship with H.F.'s father. Her failure to address any of these issues meant that H.F. could not be safe in her custody.

6

The trial court found mother's testimony to be not credible. It sustained the petition based on mother's alcohol abuse, "mental health issues" and "ongoing conflict" with H.F.'s father. Although the trial court acknowledged mother's recent attempts to engage services for her substance abuse and mental health problems, it concluded these efforts were "too little too late." Because mother took "very little accountability" for her alcohol and mental health issues, the trial court concluded reunification services would not "be very helpful for her." It found by clear and convincing evidence that reunification services should be bypassed for mother based on section 361.5, subdivisions (b)(10) and (b)(13). The trial court set the permanency planning hearing under section 366.26 for September 25. The hearing was later continued to October 23, 2019.

Section 388 Request to Change Court Order.

Mother filed a section 388 Request to Change Court Order, asking the trial court to order family reunification services, "stop" the section 366.26 hearing and increase mother's visitation. Mother contended that circumstances had changed because she had enrolled in an out-patient rehabilitation program, was active in AA, and had begun individual therapy to address her mental health issues. Mother's declaration asserted that, in an effort to demonstrate self-sufficiency, she procured "a permanent residence and stable employment." She did not specify where or with whom she was living or identify her employer.

Mother stated that she visited with H.F. frequently and they had developed a loving bond. She also stated that, in early May, she enrolled in an outpatient rehabilitation program and was "consistent with my classes up until late June 2019, when I had to relocate and was unable to continue at this program."

Mother also "had" to discontinue her individual therapy after relocating. She stated that she had "participated" in AA/NA group meetings and was able to find a sponsor. Mother did not say whether she had continued in AA/NA or met with her sponsor after she moved. She stated that her "goal [was] to find new programs around my area to continue participation and enable me to be the best parent that I know I can be." Mother's declaration included no information concerning efforts she had made to access treatment or counseling near her new home.

Mother attached letters, attendance cards and client service logs to her section 388 petition, to demonstrate her participation in treatment. These documents showed that she participated in various forms of treatment in April and May 2019. There is no record of mother's participation after May 22, 2019.

The trial court found that mother's petition did not make a prima facie showing of changed circumstances that would justify changing its prior orders. First, most of the information regarding mother's participation in treatment was not new because it predated the June 4, 2019 hearing on jurisdiction and disposition. Second, the fact that mother had a job and a more stable residence "is not a sufficient change of circumstance" given mother's chronic substance abuse issues. The trial court declined an evidentiary hearing because the offer of proof, even if supported by evidence, would not justify changing the order to bypass reunification services.

Section 366.26 Hearing.

In its report for the section 366.26 hearing, respondent noted that, since the jurisdiction and disposition hearing in early June, mother had had eight contacts with law enforcement.

8

Seven of these incidents occurred after mother initiated contact with H.F.'s biological father. In six of the incidents, the responding officer noted that mother seemed intoxicated, had rapid or slurred speech, was behaving irrationally, or was "rambling," "incoherent" or "manic."

Respondent reported that mother had attended most of her supervised visits with H.F. Although she was generally loving and caring toward the baby, she spent a great deal of time showing pictures of him to the person supervising the visit. On a couple of occasions, mother argued with the visit supervisor. Her comments and behavior made a male supervisor uncomfortable, so a different person was assigned to monitor her visits. The baby seemed to recognize mother when she entered the room. They appeared to have a loving connection. H.F. did not show emotion when the visits ended or when mother missed a visit.

The report concluded that mother continues to struggle with alcohol and unresolved mental health concerns. She made no attempt to resolve these issues. Instead, she continued to drink and have frequent contact with law enforcement related to her alcohol consumption. The report stated that mother is "combative," makes threats and blames others for her circumstances. She had not admitted any of her problems or accepted responsibility for her actions. She continued to contact H.F.'s father despite the restraining orders and their long history of domestic violence. Mother did not provide respondent with any evidence that she participating in treatment or counseling. Respondent concluded that her use of alcohol and her erratic behavior would pose a risk to H.F. if he were to be returned to her care. Respondent also noted that the termination of parental rights would not be detrimental to H.F. because "he does not

9

appear to have a significant parental bond with . . . mother . . . that outweighs the benefits he will receive in a permanent home." Following respondent's recommendation, the trial court found that H.F. is adoptable and terminated mother's parental rights.

DISCUSSION

Mother contends the trial court erred and violated her right to due process when it denied her section 388 petition without an evidentiary hearing. She further contends the trial court erred when it terminated her parental rights despite her beneficial relationship with H.F.

<u>Section 388 Petition</u>. To prevail on a section 388 petition, the moving party must establish that new evidence or changed circumstances exist so that the proposed change in the court's order would promote the best interests of the child. (§388, subds. (a), (b); *In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310.) If the liberally construed allegations of the petition do not make a prima facie showing of both elements, the petition may be denied without a hearing. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 807-808.) We review the trial court's denial of an evidentiary hearing for abuse of discretion. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

Even liberally construed, mother's section 388 petition did not establish a prima facie case that her circumstances had changed so that modifying the previous orders would be in H.F.'s best interests. The letters and attendance records attached to her declaration were the same documents presented to the court at the jurisdiction and disposition hearing. They showed mother participated in a rehabilitation program, group meetings and

10

individual therapy in April and May 2019.  But mother admitted that she left the program and her counselor when she moved, and that she had not yet accessed new treatment services.  She did not mention whether she continued to attend AA meetings or to meet with her sponsor.  Evidence that a parent has achieved a brief period of sobriety, or is in the midst of addressing a chronic substance abuse or mental health problem, "though commendable, is not a substantial change of circumstances."  (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.)  The trial court did not abuse its discretion when it summarily denied mother's section 388 petition.

Termination of Parental Rights.  If reunification efforts fail and the trial court finds that a child is adoptable, the trial court must terminate parental rights.  (§ 366.26, subd. (c)(1).)  One exception to this rule allows the court avoid termination if it "finds a compelling reason for determining that termination would be detrimental to the child [because] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (*Id.*, subd. (c)(1)(B)(i).)  Mother contends the trial court erred when it found this exception did not apply to her relationship with H.F.

We review the trial court's finding for substantial evidence.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576-577.)  In determining whether this exception applies, the trial court considers "(1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs."  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467.)  "We recognize that interaction between parent and child will always confer some incidental benefit to the child.  [Citation.]

11

To meet the burden of proof, the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits. [Citation.] The parent must demonstrate more than incidental benefit to the child. In order to overcome the statutory preference for adoption, the parent must prove he or she occupies a parental role in the child's life, resulting in a significant, positive emotional attachment of the child to the parent." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.)

Substantial evidence supports the trial court's determination that the beneficial relationship exception did not apply. H.F. was only five months old when he was removed from mother's custody; he has lived in the same home with his maternal grandmother, aunt and half-siblings ever since. His caregivers love and care for H.F. and have provided him with a safe and stable home. H.F. smiles and laughs when he is with his caregivers. He seeks them out for comfort and assistance.

Mother attended most of her supervised visits with H.F. but the record does not show that she occupies a parental role in his life. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) Her visits with H.F. were generally pleasant and brief. Mother "usually fed the child, changed his diaper, sang to the child and was attentive to him during visits." She read to him, played music off her phone for him, and encouraged "tummy time." H.F.'s social worker reported that he would smile and coo when mother entered the room to start a visit. He did not show any emotion when the visits ended and had no "adverse emotional effects" when mother missed a visit.

The beneficial relationship exception applies where the parent and child have "a substantial, positive emotional attachment such that the child would be greatly harmed" by its

12

termination.  (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)
There is no substantial evidence mother forged such a
relationship with H.F.  Although he appears to have enjoyed his
visits with her, H.F. had no difficulty separating from mother at
the visit's end and had no reaction if she missed a visit.
Moreover, there is no evidence he would be harmed by
termination of the relationship.  As an infant, H.F.'s primary
needs are for safety and stability.  These needs are amply met by
his caregivers.  Mother, by contrast, has demonstrated no ability
to provide either safety or stability.  She continues to abuse
alcohol and has not stabilized her mental health.  As a
consequence, she remains emotionally volatile and has frequent
contact with law enforcement.  Mother also maintains her
relationship with H.F.'s biological father, despite their violent
history.  Under these circumstances, the trial court correctly
found there was no beneficial relationship within the meaning of
section 366.26, subdivision (c)(1)(B)(i).

CONCLUSION

The order denying mother's section 388 petition and the
order terminating parental rights are affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


PERREN, J.


13

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Vincent W. Davis, for Obejctor and Appellant.

Leroy Smith, County Counsel, Joseph J. Randazzo,
Assistant County Counsel, for Petitioner and Respondent.